| | |
|---|---|
| AMANDA JO LUNSFORD, BY HER CONSERVATOR, BRANDALYN STEELE, <br><br> Plaintiff, <br><br> vs. <br><br> MONROE COUNTY, TENNESSEE, a Political Subdivision of the State of Tennessee; <br><br> DEPUTY LAURIE MCDANIEL, Individually and in her Official Capacity; <br><br> DEPUTY MILLER, Individually and in his Official Capacity; <br><br> DEPUTY WILDER, Individually and in his Official Capacity; <br><br> CAPTAIN CHRIS WILLIAMS, Individually and in his Official Capacity. <br><br> Defendants. | Case No. _____ <br><br> JURY DEMANDED |

## COMPLAINT

Comes the Plaintiff, Amanda Jo Lunsford, by her conservator, Brandalyn Steele, and for cause of action against the Defendants would show as follows:

### I. INTRODUCTION

1. This is an action for damages arising under the Constitution of the United States. Defendants violated the rights of Amanda Jo Lunsford that were secured to her by the Eighth and Fourteenth Amendments to the United States Constitution. While the plaintiff was an inmate and

1

suffering from serious mental illness, these defendants unnecessarily engaged the plaintiff and then used excessive force in inflicting serious trauma to the plaintiff's head and face. Further, these defendants failed to allow the plaintiff to be transported to a hospital for necessary medical treatment, thus denying her access to reasonable and necessary medical care. This conduct by the defendants shocks the conscience and is not tolerated by a civilized society.

## II. PARTIES

2.      Plaintiff Amanda Jo Lunsford is a citizen and resident of Monroe County, Tennessee. Due to mental disability and incapacity, the Chancery Court for Monroe County, Tennessee appointed the plaintiff's daughter, Brandalyn Steele, as conservator over the rights and affairs of the plaintiff. Ms. Steele brings this lawsuit on behalf of the plaintiff. The Order appointing Ms. Steele as Conservator is attached as **Exhibit A**.

3.      Defendant Monroe County, Tennessee is a political subdivision and governmental entity created and existing under the laws of the State of Tennessee. Monroe County, Tennessee may be served with process via County Mayor Mitch Ingram, at 105 College Street S., Suite 1, Madisonville, Tennessee 37354.

4.      Defendant Deputy Laurie McDaniel (hereinafter referred to as "Deputy McDaniel") was employed with Monroe County as a corrections officer at the Jail at all times material hereto. Deputy McDaniel was responsible for the care, custody, and treatment of Plaintiff Amanda Jo Lunsford. Deputy McDaniel was acting under color of state law and in the course and scope of her employment with Monroe County at all times material hereto. Deputy McDaniel may be served with process via Monroe County Sheriff Tommy Jones II, at 4500 New Highway 68 Suite 1, Madisonville, TN 37354.

5.      Defendant Deputy Miller (hereinafter referred to as "Deputy Miller") was employed with Monroe County as a corrections officer at the Jail at all times material hereto.

2

Deputy Miller was responsible for the care, custody, and treatment of Plaintiff Amanda Jo Lunsford. Deputy Miller was acting under color of state law and in the course and scope of his employment with Monroe County at all times material hereto. Deputy Miller may be served with process via Monroe County Sheriff Tommy Jones II, at 4500 New Highway 68 Suite 1, Madisonville, TN 37354.

6. Defendant Deputy Wilder (hereinafter referred to as "Deputy Wilder") was employed with Monroe County as a corrections officer at the Jail at all times material hereto. Deputy Wilder was responsible for the care, custody, and treatment of Plaintiff Amanda Jo Lunsford. Deputy Wilder was acting under color of state law and in the course and scope of his employment with Monroe County at all times material hereto. Deputy Wilder may be served with process via Monroe County Sheriff Tommy Jones II, at 4500 New Highway 68 Suite 1, Madisonville, TN 37354.

7. Defendant Captain Chris Williams (hereinafter referred to as "Captain Williams") was employed with Monroe County as captain over the Jail Operations Division of the Monroe County Jail. Captain Williams was responsible for the care, custody, and treatment of Plaintiff Amanda Jo Lunsford. Captain Williams was acting under color of state law and in the course and scope of his employment with Monroe County at all times material hereto. Captain Williams may be served with process via Monroe County Sheriff Tommy Jones II, at 4500 New Highway 68 Suite 1, Madisonville, TN 37354.

### III. STATEMENT OF JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's claims brought under Title 42 of the United States Code Section 1983. See 28 U.S.C. §§ 1331, 1343(a)(3).

9. Venue exists in the United States District Court, Eastern District of Tennessee at Knoxville, pursuant to 28 U.S.C. § 1391(b)(1) (the district in which any defendant resides) and/or

28 U.S.C. § 1391(b)(2) (the district in which a substantial part of the events or omissions giving rise to the claim occurred).

## IV. STATEMENT OF FACTS

8. For decades, the plaintiff has suffered from chronic, severe mental illness, including schizophrenia, bipolar disorder and substance abuse.

9. As a result of the plaintiff's mental illness and substance abuse, she committed various criminal offenses that resulted in her spending significant periods of time being incarcerated in the Monroe County Jail.

10. Through these periods of incarceration, employees of the the Monroe County Jail, including the named defendants, were well aware of the plaintiff and the mental disabilities from which she suffered.

11. As a result of the plaintiff being a frequent inmate of the jail, the named defendants became aware of how the plaintiff's mental illness affected her behavior, including how to appropriately respond to the plaintiff's behavior.

12. On or about September 21, 2024, the plaintiff had been an inmate at the Monroe County Jail since August 14, 2024 due to being charged with mail tampering.

13. On the morning of September 21, 2024, the plaintiff was exhibiting behavior that clearly showed that she was suffering from her mental illness and that she should not be approached by jail staff.

14. The jail staff who were performing their duties in the proximity of the plaintiff recognized that the plaintiff was suffering from mental illness and exhibiting this behavior, and they knew to not approach the plaintiff while she was in that current state.

15. On or about September 21, 2024, Deputy McDaniel was tasked with distributing meals to inmates, including the plaintiff.

4

16. Upon information and belief, Deputy McDaniel was warned by fellow correctional officers that the plaintiff was "on one," and to not open the plaintiff's cell door but instead feed her through the door's flap.

17. Prior to September 21, 2024, Deputy McDaniel had served as a correctional officer for many years, and she was well aware of the plaintiff and her mental health disabilities.

18. Despite being warned not to open the plaintiff's cell door, Deputy McDaniel opened the plaintiff's cell door.

19. Upon information and belief, after Deputy McDaniel opened the plaintiff's cell door, the plaintiff moved towards the cell's opening.

20. As the plaintiff moved towards the entrance of the cell, Deputy McDaniel stuck the plaintiff multiple times in the head and face using her fists and blunt force objects.

21. At no time prior to, and during, this violent beating did Deputy McDaniel attempt to use alternative non-force solutions to defuse the situation and pacify the plaintiff.

22. As a result of the beating inflicted by Deputy McDaniel, the plaintiff was bleeding profusely from her face.

23. Correctional officers Deputy Miller and Deputy Wilder eventually arrived and were able to stop Deputy McDaniel from further beating the plaintiff.

24. Upon information and belief, the Monroe County Jail has policies that require employees and staff of the jail to transport inmates that suffer injuries during use of force incidents to a medical facility.

25. Upon information and belief, following this violent beating, Defendant Captain Chris Williams ordered the staff not to transport the plaintiff to a medical facility.

26. Plaintiff Lunsford was secured back in her cell and received minor medical treatment from the jail nurse, which mainly consisted of bandages for the lacerations and severe

5

facial trauma.

27. The plaintiff was never given the option or opportunity to receive treatment at a hospital or similar medical facility.

28. On September 22, 2024, the day after the beating, Deputy McDaniel posted videos on a social media accounty of her hand and broken jewelry, with an inscription that stated, "When someone finds out!"

29. Following this excessive force incident, none of the individual defendants were disciplined or terminated from employment.

30. As a result of the plaintiff's mental disability and incapacity, the policies and procedures related to filing a grievance or pursuing other similar administrative remedies were unavailable to the plaintiff in that she did not have the mental capability to utilize the jail's administrative procedures to file a grievance regarding the use of excessive force or the failure to provide access to medical care.

## V. CAUSES OF ACTION

### 42 U.S.C. § 1983
### Fourteenth Amendment Violation – Excessive Force and Deliberate Indifference to Plaintiff's Right to Adequate Medical Treatment for a Serious Medical Need

### Individual Liability

31. Plaintiff re-alleges Paragraphs 1-30 of this Complaint as if fully set forth herein.

32. A cause of action exists under 42 U.S.C. § 1983 for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by federal law and the Constitution of the United States of America.

33. The Due Process Clause of the Fourteenth Amendment prohibits the individual Defendants from using excessive force against a pre-trial detainee[1] in the Monroe County Jail.

---

[1] See Craddock v. Wellpath, LLC, Case No. 24-1536, 2025 U.S. App. LEXIS 1601 *8-9 (6th Cir., Jan. 23, 2025).

6

34.     Excessive force under the Fourteenth Amendment is objectively unreasonable conduct that, given the facts and circumstances, would "shock the conscience" and amount to an arbitrary exercise of governmental power.

35.     The Fourteenth Amendment to the United States Constitution also requires that a pre-trial detainee be provided adequate medical care while in the custody of any governmental entity.

36.     Deliberate indifference to the serious medical needs of a pre-trial detainee violates the Due Process Clause of the Fourteenth Amendment, where treatment is delayed or denied when an objectively reasonable person would conclude medical treatment was needed based upon the facts and circumstances there present.

37.     Deputy McDaniel knew that the plaintiff was experiencing a mental health episode and, based on her years of experience as a correctional officer, as well as the long history of interacting with the plaintiff, knew not to open the cell door while the plaintiff was suffering this type of mental health situation.

38.     Deputy McDaniel deliberately disregarded the clear and obvious risks by opening the plaintiff's cell door rather than simply feeding the plaintiff through the cell door's flap.

39.     After creating this risk by opening the cell door, Deputy McDaniel had the means and ability to use non-force alternatives and techniques around the plaintiff; however, Deputy McDaniel chose to use her fists and blunt instruments to strike the plaintiff's head and face.

40.     Following this incident, Deputies McDaniel, Miller and Wilder, and Captain Williams were required to provide access to reasonable and appropriate access to medical treatment to the plaintiff.

41.     Due to the severity of the facial trauma inflicted on the plaintiff, the only adequate medical treatment available was at a hospital or similar medical facility.

42. Deputies McDaniel, Miller and Wilder, and Captain Williams failed to facilitate transporation for the plaintiff to be taken to a hospital or similar medical facility for necessary medical treatment.

43. Captain Williams acted with delibertate indifference to the plaintiff's right to access medical care by ordereing his jail staff not to facilitate transporation for the plaintiff to a hospital or similar medical facility.

44. As a result of the actions of Deputies McDaniel, Miller and Wilder, and Captain Williams, the plaintiff was only given access to limited, inadequate medical treatment for her severe facial trauma.

45. Any reasonable observer, given the facts and circumstances of this beating would come to the unavoidable conclusion that Deputies McDaniel, Miller and Wilder, and Captain Williams conduct was objectively unreasonable so as to be unacceptable in a civilized society and shocking to the conscience.

46. On any objective scale, the actions and conduct of Deputy McDaniel constitute an arbitrary and capricious exercise of governmental power and constitutes excessive force in violation of the Due Process Clause of the Fourteenth Amendment.

47. Moreover, Deputies McDaniel, Miller and Wilder, and Captain Williams were aware that Plaintiff Lunsford was suffering from a serious medical condition as the plaintiff had sustained serious injuries to her head and face. These defendants were aware that the plaintiff was in need of immediate and urgent medical care. Defendants had the ability and authority to have the plaintiff immediately transported from the jail to a hospital. These Defendants were deliberately indifferent to the plaintiff's serious medical needs in denying the plaintiff access to necessary and adequate medical care.

8

48.     Defendants thus had actual knowledge of the plaintiff's condition, and they purposely and/or knowingly refused to provide access to the emergency medical care that she required.

49.     As a result of these defendants' deliberate indifference to the plaintiff's right to be free from excessive force and to be afforded adequate medical care for a serious medical need, the plaintiff suffered serious injuries.

50.     Plaintiff therefore sues the individual defendants for their deliberate indifference to, and violation of, her right to be free from excessive force and to her right to adequate medical care for a serious medical need.  Plaintiff seeks the following relief:

    a.     Economic damages for the cost of past and future medical care, and non-economic damages for pain and suffering, mental and emotional anguish, disfigurement, permanent impairment, and loss of enjoyment of life;

    b.     Punitive damages; and

    c.     Attorney's fees pursuant to 42 U.S.C. § 1988.

## Municipal Liability

51.     Plaintiff re-alleges Paragraphs 1-50 of this Complaint as if fully set forth herein.

52.     The Due Process Clause of the Fourteenth Amendment prohibits Defendant Monroe County, Tennessee from having any custom, policy, or procedure which would constitute the proximate cause of its officers' deprivation of any citizen's constitutional rights. Where such a custom, policy, or procedure has resulted in its officers' deprivation of a citizen's constitutional rights under 42 U.S.C. § 1983, sovereign immunity is removed, thereby allowing the citizen to recover her damages in a suit against the municipality.

53.     The conduct by Deputy McDaniel in blatantly disregarding the warning from a fellow correctional officer to not open the plaintiff's cell door, and then using excessive force

against a pre-trial detainee, is proof that this was a custom and practice of the Monroe County Sheriff's Office.

54. The conduct by Captain Williams in ordering his jail staff not to have the plaintiff transported to a hospital is proof that this was a custom and practice of the Monroe County Sheriff's Office.

55. The conduct by Deputies McDaniel, Miller, Wilder and other jail staff, to not have the plaintiff transported to a hospital is proof that this was a custom and practice of the Monroe County Sheriff's Office.

56. The decision by the Sheriff, and other decision-making officials, to not render any discipline to the individual defendants for this incident is proof that this was a custom and practice of the Monroe County Sheriff's Office.

57. Upon information and belief, Monroe County is liable to the plaintiff pursuant to 42 U.S.C. § 1983 based on its history of prior incidences where its officers used excessive force against inmates in their custody. This history of similar incidences constitutes a custom thereby rendering the county liable.

58. Upon information and belief, Monroe County failed to adequately train its correctional officers on the requirements of the Fourteenth Amendment in the use of excessive force.

59. Upon information and belief, Monroe County has failed to adequately train its correctional officers who observe inmates suffering from serious medical conditions as to their duty to provide access to reasonable and adequate medical care.

60. Monroe County is liable to the plaintiff because its customs, policies, and procedures were the proximate cause of the individual officers' deliberate indifference to the

plaintiff's constitutional right against the use of excessive force, and for the requirement to provide medical care to inmates suffering from serious medical conditions.

61.     Plaintiff therefore sues Monroe County and seeks the following relief:

a.     Economic damages for the cost of past and future medical care and non-economic damages for pain and suffering, mental and emotional anguish, disfigurement, permanent impairment, and loss of enjoyment of life; and

b. Attorney's fees pursuant to 42 U.S.C. § 1988.

## VI. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Amanda Jo Lunsford, by her Conservator, Brandalyn Steele, respectfully requests this Honorable Court grant relief as follows:

a. Issue process, requiring the Defendants to answer this Complaint;

b. Empanel a jury to try this cause;

c. Award compensatory damages against all Defendants pursuant to the claims brought pursuant to 42 U.S.C. § 1983 in the amount of $500,000.00;

d. Award punitive damages against all Defendants, except for Monroe County, Tennessee, pursuant to the claims brought pursuant to 42 U.S.C. § 1983 in the amount of $500,000.00;

e. Award Plaintiff attorney's fees pursuant to 42 U.S.C. § 1988;

f. Award costs of this action including discretionary costs; and

g. Award any other or further relief to which he may be entitled.

Respectfully submitted this 19th day of September, 2025.

/s/ *Thomas J. Smith*
Thomas J. Smith, BPR #035331
Jesse J. Campbell, BPR #036405
Marcos M. Garza, BPR #021483
Jason E. Legg, BPR #018765
Philip La Nasa, BPR #026148
Brent Morris, BPR #026148
**GARZA LAW FIRM, PLLC**
118 E Watauga Ave
Johnson City, TN 37601
E-mail: tsmith@garzalaw.com
Phone: (423) 282-1041
Fax: (865) 474-9397